IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| vs. | ) | Crim. No. 08-224 |
| | ) | |
| | ) | |
| WILLIAM KELLY PENN | ) | |

OPINION

Presently before the Court is Defendant William Kelly Penn's Motion for Retroactive Application of Sentencing Guidelines to Crack Cocaine Offense pursuant to 18 U.S.C. § 3582(c) for a reduction of sentence. ECF No. 49. The government has filed a response to the motion. ECF No. 56. Mr. Penn then filed a Reply to the government's response, to which the government filed its own reply. ECF Nos. 57 & 59. For the reasons that follow we will grant Mr. Penn's motion in part.

I. Background

Mr. Penn was charged in a two-count federal indictment with possession with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). On March 23, 2009, Mr. Penn plead guilty to Count One, possession with intent to distribute 50 grams or more of cocaine base, pursuant to a written plea agreement. As part of the plea agreement Mr. Penn agreed to waive certain appellate rights as well the right to file a motion to vacate sentence, under 28 U.S.C. 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence. Plea Agr. ¶ A.11.

The parties also specified that the amount of crack cocaine attributable to Mr. Penn was between 50 and 150 grams. Plea Agr. ¶ C.2. Accordingly, pursuant to the Sentencing Guidelines, Mr. Penn's base offense level was determined to be 30. The base offense level was increased by 2-levels due to the fact that Mr. Penn possessed a firearm, U.S.S.G. § 2D1.1(b)(1), and decreased by 2-levels due to Mr. Penn's acceptance of responsibility, U.S.S.G. § 3E1.1(a), making his total offense level 30. With a criminal history category of V, Mr. Penn's advisory guideline range was 151 to 188 months' imprisonment. The statutory mandatory minimum penalty for the offense was 120 months' imprisonment.

In the Presentence Report, the Probation Officer indicated that there were factors present that may warrant departure in Mr. Penn's case. PSR ¶ 89. Specifically, the Probation Officer noted that it appeared that Mr. Penn's criminal history may overrepresent his actual criminal history and the seriousness of his criminal behavior, and that a departure pursuant to U.S.S.G. § 4A1.3 and United States v. Shoupe, 35 F.3d 835 (3d Cir. 1994), may be warranted. Id.

Mr. Penn's counsel filed a Position with Respect to Sentencing Factors acknowledging that a departure based on overstatement of criminal history may be warranted, and also indicated that he would be requesting a variance based on the disparity in sentencing between crack and powder cocaine. ECF No. 41, ¶ 1. In fact, Mr. Penn's counsel did file a Sentencing Memorandum requesting that the Court vary from the advisory guideline range and impose the statutory mandatory minimum sentence of 120 months based on the disparity between crack and powder cocaine. ECF No. 42. At the sentencing hearing the government argued for a sentence within the advisory guideline range.

On June 23, 2009, we varied from the advisory guideline range and sentenced Mr. Penn to a term of imprisonment of 135 months. As we explained at sentencing, we believed that Mr. Penn's criminal history likely overrepresented the seriousness of his prior record. Although we varied from the advisory guideline range we did not grant a downward departure and therefore change the guidelines calculation.

On June 29, 2009, despite the agreement waiving his right to appeal Mr. Penn, acting pro se, filed a Notice of Appeal. ECF No. 45. The United States Court of Appeals for the Third Circuit enforced the appellate waiver by summary action. ECF. No. 51.

## II.  Discussion

On August 3, 2010, Congress enacted the Fair Sentencing Act, which reduced the disparity between crack cocaine and powder cocaine by reducing the statutory penalties for crack cocaine. Thereafter, the United States Sentencing Commission adopted Amendment 750 to account for the changes in the Fair Sentencing Act and revised the crack cocaine guidelines commensurate with the reductions in the statute. On June 30, 2011, the Sentencing Commission Adopted Amendment 759, making the changes in Amendment 750 retroactive to offenders who are serving terms of imprisonment. Mr. Penn thus filed a motion seeking a reduction in his sentence based on Amendment 750 pursuant to 18 U.S.C. § 3582(c).

Section 3582(c) provides in relevant part as follows:

> **(c) Modification of an imposed term of imprisonment.**– The court may not modify a term of imprisonment once it has been imposed except that– . . .
>
> **(2)** in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2). The "applicable policy statement" relevant here is § 1B1.10, which, among other things, excludes a court from retroactively reducing a defendant's sentence if the amendment (here, Amendment 750) "does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a).

Mr. Penn argues that he is eligible for a reduction in sentence based on Amendment 750. Prior to the Fair Sentencing Act Mr. Penn's offense level was determined to be 30 based on the amount of crack cocaine attributable to him. Based on a criminal history category of V and an offense level of 30, Mr. Penn's advisory guideline sentencing range was 151 to 188 months' imprisonment.

He argues that pursuant to Amendment 750 and the Fair Sentencing Act, Mr. Penn's retroactively adjusted offense level should be calculated as 26. Based on a criminal history category of V and an offense level of 26, Mr. Penn submits that his amended advisory guideline sentencing range would be 110 to 137 months' imprisonment. Mr. Penn further argues that the appropriate amended advisory guideline should also include a reduction in his criminal history category from V to IV, to reflect the fact that at sentencing we stated that criminal history category IV was likely more reflective of Mr. Penn's actual criminal history. Thus, Mr. Penn concludes that the appropriate amended advisory guideline range should be 92 to 115 months' imprisonment, based on an offense level of 26 and a criminal history category of IV.

Finally, Mr. Penn makes an argument that in light of the Fair Sentencing Act's lower statutory mandatory minimums, the 120-month mandatory minimum sentence applicable at his original sentencing should not be applicable upon a retroactive resentencing. Accordingly, Mr. Penn asks the Court to reduce his sentence to 92 months.

The government opposes any retroactive reduction in Mr. Penn's sentence. First, the government argues that Mr. Penn has waived his right to file a motion pursuant to 18 U.S.C. § 3582(c) in the Plea Agreement. Next, the government argues that if the waiver is not enforced, then Mr. Penn is correct that he is eligible for a reduction in sentence, but not as low as Mr. Penn requests. The government contends that pursuant to Amendment 750 and the Fair Sentencing Act, Mr. Penn's retroactively adjusted offense level should be calculated as 28, not 26. Based on a criminal history category of V and an offense level of 28, the government submits that Mr. Penn's amended advisory guideline sentencing range is 130 to 162 months' imprisonment. Next, the government argues that the Court should deny Mr. Penn's request for a sentence below the amended guideline range because such a reduction is not authorized.

The government also argues that the 120-month statutory mandatory minimum is still in effect for defendants in Mr. Penn's position because the lowered statutory mandatory minimum penalties of the Fair Sentencing Act have not been made retroactive to defendants whose sentences became final before the passage of the Act. Finally, the government argues that although the court could retroactively reduce Mr. Penn's sentence to 130 months, we should decline to do so.

### A. Collateral Waiver

The government first argues that Mr. Penn has waived his right to file a motion pursuant to 18 U.S.C. § 3582(c) in the Plea Agreement. Gov. Resp. 6. The waiver provision in the plea agreement provides that Mr. Penn waives his right to file a direct appeal except under certain limited conditions and also waives "the right to file any other collateral proceeding attacking his conviction or sentence." Id. 1-2. According to the government, a 3582(c) motion seeking a

modification of a sentence based on a Guideline Amendment that has explicitly been retroactive is in fact a collateral attack on the sentence. Gov. Resp. to Reply 2. We disagree.

The relevant portion of the waiver provision appears in the appellate waiver section of the agreement and provides as follows:

> William Kelly Penn further waives the right to file a motion to vacate sentence, under 28 U.S.C. §2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence.

Plea Agr. ¶ A.11. A plain reading of the provision shows that the parties did not address the right to file a section 3582(c) motion seeking a retroactive sentence reduction. *Compare* United States v. Monroe, 580 F.3d 552 (7th Cir. 2009) (defendant may move for sentence reduction under 3582(c) where waiver provision does not specifically mention a 3582(c) motion and where it is not clear and unambiguous that defendant waived the right to seek a sentence reduction) and United States v. Chavez-Salais, 337 F.3d 1170 (10th Cir. 2003) (defendant will not be held to have waived a right neither clearly mentioned in agreement nor specifically addressed during plea colloquy; waiver provision in defendant's plea agreement did not preclude defendant filing a motion for a sentence reduction under 3582(c) as such a motion is not a collateral attack aimed at overturning defendant's conviction and sentence) *with* United States v. Brown, 2011 WL 6118607 (Dec. 8, 2011) (waiver enforced where defendant specifically waived his right to file a motion for relief under § 3582(c) in the plea agreement). United States v. Goudeau, 390 Fed. Appx. 814 (10th Cir. 2010) (same).

Moreover a motion to modify a sentence pursuant to 18 U.S.C. § 3582(c) based on a retroactive change in the Sentence Guidelines is not a "collateral attack" on defendant's conviction or sentence as traditionally understood.

> The conventional understanding of "collateral attack" comprises challenges brought under, for example, 28 U.S.C. § 2241, 28 U.S.C. § 2254, 28 U.S.C. §

6

> 2255, as well as writs of *coram nobis*. These are extraordinary remedies that complain about the substance of, or proceedings that determined, a defendant's original sentence or conviction. It is by no means obvious that a defendant's motion to modify his sentence under 18 U.S.C. § 3582(c)(2), pursuant to a subsequent amendment in the Sentencing Guideline that was applied to his case, would be reasonably understood as a "collateral attack" on his sentence as opposed to a motion prospectively to modify a sentence based on events occurring after the original sentence was imposed. *Cf.* United States v. Torres-Aquino, 334 F.3d 939 (10th Cir.2003) (which similarly draws a distinction between § 2255 actions, which attack the original sentence, and § 3582(c)(2) actions, which do not attack the original sentence but only seek to modify it).

Chavez-Salais, 337 F.3d at 1172. *See also* Monroe, 580 F.3d at 557, 558 (§2255 and collateral waiver provisions "involve claims that the sentence imposed by the sentencing court as part of its judgment was somehow erroneous or otherwise infirm," whereas a 3582(c) motion encompasses a "right to seek a reduction in the length of [a] sentence based on a retroactive change in the Sentencing Guidelines").

Finally, Justice Sotomayor confirmed the necessity of including an explicit waiver of a right to file a 3582(c) motion in a plea agreement while implicitly recognizing the distinction between a collateral attack and a statutory retroactive sentence reduction in a case in which the defendant waived his right to file a collateral attack of his sentence but was nonetheless permitted to seek a reduction in sentence pursuant to section 3582(c). Justice Sotomayor explained as follows:

> [I]f the Government wants to ensure *ex ante* that a particular defendant's term of imprisonment will not be reduced later, the solution is simple enough: Nothing prevents the Government from negotiating with a defendant to secure a waiver of his statutory right to seek sentence reduction under § 3582(c)(2), just as it often does with respect to a defendant's rights to appeal and collaterally attack the conviction and sentence. *See* 18 U.S.C. § 3742; 28 U.S.C. § 2255 (2006 ed., Supp. III); *see also* App. 28a-29a (provision in Freeman's agreement expressly waiving both rights). In short, application of § 3582(c)(2) to an eligible defendant does not—and will not—deprive the Government of the benefit of its bargain.

Freeman v. United States, 131 S.Ct. 2685, 2699 (2011).

In this case the government did not secure a waiver of Mr. Penn's statutory right to seek sentence reduction under § 3582(c)(2) when negotiating the Plea Agreement. Thus, Mr. Penn did not waive his right to seek a reduction of sentence pursuant to 18 U.S.C. § 3582(c)'s motion.[1]

### B. The Appropriate Amended Offense Level

Mr. Penn argues that he is eligible for a retroactive reduction in sentence based on Amendment 750 because his advisory guideline sentencing range of 151 to 188 months has been lowered. The government agrees, but the parties disagree on the appropriate amended offense level that applies to Mr. Penn. Mr. Penn contends that his offense level should be calculated as 26 and the government contends that the appropriate offense level is 28.

As noted the parties' Plea Agreement stipulates that the amount of crack cocaine attributable to Mr. Penn is between 50 and 150 grams. At the time of sentencing, the guidelines indicated a single offense level of 30 for an amount of crack between 50 and 150 grams. The current guidelines have split that category range into two: for 28 to 112 grams of crack cocaine the offense level is 26, and for 112 to 196 grams the offense level is 28.

Mr. Penn's position is that the "maximum amount of crack cocaine involved in the offense conduct that the Court can reliably attribute to Mr. Penn is 50 grams, because the Plea Agreement obviated the need for the Court to make a specific finding of the drug quantity amount." Def. Reply 10. We disagree.

---

[1] In United States v. Neal, 2012 WL 1018948 (W.D.Pa. March 26, 2012) the court did enforce a broad collateral attack waiver where the defendant filed a 2255 motion and a separate 3582(c) motion. We find the Neal case to be distinguishable. The District Court, although purporting to be enforcing a waiver of a 3582(c) motion, nonetheless characterized defendant's motions in the plural as follows: "petitioner is not challenging his conviction at all, he merely seeks to have his sentence vacated and requests that he be re-sentenced pursuant to a lower guidelines range based on purported sentencing errors and the alleged ineffectiveness of his counsel at sentencing." Id. 1018948at *4. In other words, Neal was collaterally attacking his sentence based on errors and ineffectiveness. In his pro se 3582(c) motion Neal purported to challenge the calculation of his criminal history points. ECF No. 71, Cr 05-182. In any event the Court analyzed Neal's 3582(c) motion and found that he would not be entitled to relief under the retroactive Amendment at issue in his case because his sentencing range would not be reduced. Id. n.5.

8

Although the plea agreement stipulates a wide range between 50 and 150 grams, there is undisputed record evidence demonstrating that the weight of crack cocaine in this case was more than 112 grams. First, during the plea colloquy we asked the government to explain what evidence it expected to be able to prove should this case go to trial. The government attorney explained that the Drug Enforcement Administration undertook an investigation targeting Mr. Penn and to that end used a confidential informant to purchase crack cocaine from Mr. Penn on four separate occasions. Plea Tr. 21-22. Armed with the information from its investigation the DEA obtained a search warrant for a residence in which Mr. Penn was found when the warrant was executed on January 26, 2006. Id. at 22. Among other items found in that residence and attributable to Mr. Penn was 99.8 grams of crack cocaine. Id. at 22-23. Both Mr. Penn and his attorney agreed with the government's recitation of facts. Id. at 23.

The Probation Officer, working from information provided by the government, set forth the weight of crack cocaine involved in each of the four occasions the confidential informant purchased crack from Mr. Penn. The Probation Officer indicated that on January 12, 2006, the amount purchased was 10.6 grams; on January 13, 2006, the amount was 13.5 grams; on January 19, 2006, the amount was 14.3 grams; and on January 26, 2006, the amount was 19.8 grams. PSR ¶ 10. Thus the total amount of crack cocaine involved in the four undercover buys was 58.2 grams, which, when added to the 99.8 grams seized at the residence, amounted to a total amount of crack cocaine of 158 grams. PSR ¶¶ 11, 14. However, because the parties stipulated that the maximum amount of crack cocaine attributable to Mr. Penn was 150 grams, the Probation Officer calculated the base offense level based on a weight between 50 and 150 grams. PSR ¶19

(see also ¶ 77 ("but for the plea agreement," Mr. Penn's base offense level would have been 32 based on an amount between 150 and 500 grams).

In response to the Presentence Report concerning the weight of the drugs, the government explained that "the total amount of crack cocaine attributable to the defendant is actually over 150 grams" but that the government "accidentally calculated the amount of drugs involved for sentencing purposes inaccurately." Gov. Position ¶ 3. The government, however, agreed that pursuant to the stipulation in the plea agreement that the base offense level was correctly calculated at 30 based on a weight between 50 and 150 grams. Id.

Mr. Penn responded to the government's Position by claiming the government's allegation of "error" was disingenuous. Def. Position ¶ 3. As to the substance of the actual weight, Mr. Penn pointed to the evidence produced at his detention hearing in which a police officer testified that "nearly 100 grams of crack" was recovered from the residence and that "3 earlier buys from Mr. Penn ranged in size from 10 to 28 grams." Id. Thus, Mr. Penn asserted that he was responsible for 100 to 150 grams of crack cocaine. Id.

At sentencing the government specifically stated that it "failed to include the 13.5 grams of crack cocaine from the January 13th of 2006 buy . . . ." Sentencing Tr. at 10. Thus, the government placed the total amount of crack cocaine at 144.5 grams. Id.

Mr. Penn did not object to or challenge the Probation Officer's calculation regarding the amount of crack cocaine involved in each of the four undercover buys. The government conceded, as it had to, that the total amount of crack cocaine found by the Probation Officer could not be attributed to Mr. Penn because of the plea agreement. According to the government, Mr. Penn should not be charged with the 13.5 gram buy on January 13, 2006, making the total amount of crack to be 144.5. There is no explanation in the record as to why

10

this transaction was the one the government failed to account for when negotiating a plea agreement as opposed to one of the other transactions. However, even if we eliminate from the calculation the transaction involving the greatest amount of weight of the four transactions (19.8 grams on January 26, 2006) the total amount of crack cocaine attributable to Mr. Penn – 138.2 grams -- is still within the amended range of 112 to 196 grams corresponding to an offense level of 28.

Based on the above evidence of record we find that the amount of crack cocaine attributable to Mr. Penn in determining his amended base offense level under Amendment 750 is between 112 and 150 grams. This range corresponds to a base offense level of 28, to which we add 2-levels for possession of a firearm in furtherance of a drug trafficking crime, and deduct two-levels for acceptance of responsibility to arrive at amended total offense level of 28. We therefore find that Mr. Penn's amended total offense level is 28.

### C. Extent of a Variance

Mr. Penn also argues that "the Court again should account for the overrepresentation of Mr. Penn's criminal history and impose a sentence consistent with a Criminal History Category of IV." Def. Motion for Reduction of Sentence at 4. According to Mr. Penn, because we originally imposed a non-guidelines sentence, and explicitly based that sentence on a guidelines range which has subsequently been amended, we are authorized to again apply a variance from criminal history V to IV. Id. at 22 (relying on Freeman v. United States, 131 S.Ct. 2685 (2011) and United States v. Ware, 2012 WL 38937 (E.D.Pa. 2012)).

Standing in the way of Mr. Penn's argument is section 3582(c) and its explicit direction that any reduction imposed must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). The relevant "applicable policy statement" is

11

§ 1B1.10, which along with the commentary, Mr. Penn concedes "prohibit[s] the application of any variance in Section 3582(c) proceedings." Def. Reply 11.

### 1. The Applicable Guideline Range

Section § 1B1.10(a)(1) provides as follows:

> In a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (c) below, the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2). As required by 18 U.S.C. § 3582, any such reduction in the defendant's term of imprisonment shall be consistent with this policy statement.

U.S.S.G. § 1B1.10(a)(1). Section 1B1.10(b)(1) further instructs the court as follows:

> [T]he court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (c) had been in effect at the time the defendant was sentenced. In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected.

U.S.S.G. § 1B1.10(b)(1).

The commentary to section 1B1.10 has again been amended to make it clear that a defendant's "applicable guideline range" for purposes of determining whether a retroactive reduction is permitted is the guideline range calculated *before* consideration of any departure or variance. Application Note 1(A) states in pertinent part: "Eligibility for consideration under 18 U.S.C. 3582(c)(2) is triggered only by an amendment listed in subsection (c) that lowers the applicable guideline range (*i.e.*, the guideline range that corresponds to the offense level and criminal history category . . . determined *before* consideration of any departure provision in the Guidelines Manual or any variance)." U.S.S.G. § 1B1.10, comment. (n.1(a)) (emphasis added). See also United States v. Hilliard, 2012 WL 425968 (W.D.Pa. Feb. 9, 2012); United States v. Flemming, 2012 WL 33019 (E.D.Pa. Jan 5, 2012). In any sentence in which we vary from the

advisory guideline sentence, whether a defendant is eligible for a retroactive reduction in his sentence will depend upon the advisory guideline range applicable before we varied. Thus, it is clear that Mr. Penn's applicable guideline range, as discussed above, was 151 to 188 months: the range applicable before any variance. That guideline range has been lowered to 130 to 162 months.

## 2. Extent of a Reduction

The Commentary and Application Notes to 1B1.10 demonstrate that in a case like Mr. Penn's the extent of any reduction we impose is limited to the low end of the amended guideline range. Section 1B1.10(b)(2)(A) provides as follows:

> Limitation.—Except as provided in subdivision (B), the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c) and this policy statement to a term that is less than the minimum of the amended guideline range determined under subdivision (1) of this subsection.

U.S.S.G. § 1B1.10(2)(A). The exception that allows a court to retroactively reduce a sentence below the minimum of the amended guideline range is strictly limited. Section 1B1.10(b)(2)(B) provides as follows:

> Exception for Substantial Assistance. – If the term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing pursuant to a government motion to reflect the defendant's substantial assistance to authorities, a reduction comparably less than the amended guideline range determined under subdivision (1) of this subsection may be appropriate.

U.S.S.G. § 1B1.10(b)(2)(B). Mr. Penn did not receive a lower sentence based upon his substantial assistance.

Prior to the recent Amendments to the section 1B1.10, its Commentary, and Application Notes, it was permissible for a court who had varied or departed at the original sentencing upon imposing a retroactive reduction to a defendant's sentence to reduce the sentence in the same

13

proportion as the court varied or departed. That avenue is now foreclosed except in the cases of substantial assistance. Application Note 3 to 1B1.10 makes this explicitly clear: "If the term of imprisonment imposed was outside the guideline range applicable to the defendant at the time of sentencing, the limitation in subsection (b)(2)(A) also applies." Here, Mr. Penn was sentenced to a term of imprisonment below the guideline range based on a variance. According to 1B1.10(2)(A) and Application Note 3, we "may reduce the [Mr. Penn's] term of imprisonment, but shall not reduce it to a term of less than" the minimum of the amended guideline range of 130 months.

### 3. Freeman and Ware

As noted, Mr. Penn concedes the above limitations and instead argues that under the Supreme Court case of Freeman and in light of the Eastern District of Pennsylvania's decision in Ware we are permitted to impose a sentence below the minimum of the amended guideline range because the applicable policy statement commentary is invalid. Def. Motion 20. We disagree with Mr. Penn's analysis as applied to his case. In our view, we are bound by the applicable policy statement, and as Mr. Penn concedes, the policy statement and its commentary limit the reduction that we may impose to the minimum of the amended guideline range.

### D. Applicability of the Statutory Mandatory Minimum

Finally, Mr. Penn argues that in light of the Fair Sentencing Act's lower statutory mandatory minimums, the 120-month mandatory minimum sentence applicable at his original sentencing should not be applicable upon a retroactive resentencing. Although the sentencing guidelines applicable to crack cocaine defendants have been lowered and made retroactive to defendants such as Mr. Penn, the lowered statutory mandatory minimum penalties of the Fair Sentencing Act have not been made retroactive to defendants whose sentences became final

14

before the passage of the Act. United States v. Reevey, 631 F.3d 110 (3d Cir. 2010). Thus, although we have already determined that the minimum reduced sentence we can impose is 130 months, in any event the 120-month statutory mandatory minimum sentence would still apply to Mr. Penn.

### E. The Appropriate Sentence

As noted, Mr. Penn sought a reduction in his original sentence of 135 months to 92 months if we agreed with his entire argument; a reduction to 110 months if we agreed with his argument but disagreed on applying a lower range based on a criminal history category of IV; and a reduction to 120 months if we determined that the statutory mandatory minimum still applied. However, we have determined that the appropriate amended advisory guideline range applicable to Mr. Penn is 130 to 162 months. Thus, the lowest reduction we can impose is 130 months.

The government argues that even though we have the authority to reduce Mr. Penn's sentence by five months we should decline to do so. According to the government, we already took into account the disparity between crack and powder cocaine at sentencing in imposing a below guidelines sentence and to further reduce his sentence would result in "double-counting." Govt. Resp. 17, citing Sentencing Tr. at 5-7.

We disagree. First, at sentencing we wanted to ensure that the Presentence Report properly accounted for the changes to the guidelines reducing the disparity between crack and powder cocaine. If anything our statements at sentencing regarding the disparity between crack and powder cocaine can best be read as the court declining to vary below the guidelines based on the disparity because "this change in the rules on the crack/powder cocaine disparity had [already] been incorporated." Sentencing Tr. at 5.

15

In any event, the 2010 changes to the guidelines further reducing the disparity between crack and powder cocaine included in Amendment 750 were not in existence at the time of sentencing. Thus, we fail to see how even if we had varied based on a disagreement with the crack to powder ratios originally it would amount to "double counting" simply by applying the Amendment as intended. In other words, if the guideline range applicable to a defendant has been retroactively reduced, the lower amended guideline range could not have been taken into account by the court at the original sentencing.

In addition, we did not vary from the advisory guideline range based on a crack to powder disparity; we varied based on our determination that Mr. Penn's criminal history likely overrepresented the seriousness of his prior record. Sentencing Tr. at 21.

In this case, the low end of the amended guideline range is 130 months. At his original sentencing Mr. Penn faced a low end of 151 months. Had Mr. Penn appeared before the Court with a low end of 130 months and we varied as we did at his original sentence then Mr. Penn would likely have received a sentence below 130 months.

Therefore, we cannot agree with the government that by reducing Mr. Penn's sentence by five months we will be "double counting" or otherwise handing Mr. Penn a windfall. Mr. Penn is eligible for a retroactive reduction in his sentence based on Amendment 750. We will grant Mr. Penn's motion for reduction of sentence and reduce his previously imposed sentence of 135 months to 130 months.

**ORDER**

AND NOW, to-wit, this \_\_\_23rd\_\_\_ day of July, 2012, in accordance with the above, it is hereby ORDERED, ADJUDGED and DECREED that Defendant's Motion to Reduce Sentence Pursuant to Title 18 U.S.C. §3582(c)(2) (ECF No. 49), be and hereby is GRANTED.

An "Order Regarding Motion for Sentence Reduction" will be entered reducing Defendant's sentence of 135 months' imprisonment to 130 months' imprisonment.

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
Senior United States District Judge

cc: Counsel of record